AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the

### Western District of New York

**United States of America**

v.

**MICHAEL RECH,**

Case No. 21-MJ-4044

*Defendant*

## CRIMINAL COMPLAINT

I, <u>Alan Roth, Special Agent with the Internal Revenue Service-Criminal Investigation</u>, the complainant in this case, state that the following is true to the best of my knowledge and belief:

Between in or about April 2020 and in or about February 2021, in the Western District of New York, the defendant did devise a scheme to fraudulently obtain three (3) Paycheck Protection Program loans, in violation of Title 18, United States Code, Section 1343 and did commit money laundering in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(ii) and 1957.

This Criminal Complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT OF IRS-CI SPECIAL AGENT ALAN ROTH.**

☒ Continued on the attached sheet.

*Complainant's signature*

<u>ALAN ROTH, Special Agent, IRS-CI</u>
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: __March 19, 2021__

*Judge's signature*

MARIAN W. PAYSON
<u>UNITED STATES MAGISTRATE JUDGE</u>

City and State: __Rochester, New York__

<u>**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**</u>

STATE OF NEW YORK   )
COUNTY OF MONROE   )      ss.:
CITY OF ROCHESTER   )

     I, ALAN ROTH, being duly sworn, depose and say:

<u>**INTRODUCTION AND AGENT BACKGROUND**</u>

     1.     I am a Special Agent of Internal Revenue Service-Criminal Investigation ("IRS-CI"), having been duly appointed on January 20, 2008 and, as much, am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure, that is, a Government agent engaged in the enforcement of the criminal laws of the United States. Your Affiant's responsibilities include the investigation of possible criminal violations of the Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), the Money Laundering Control Act (Title 18, United States Code), and related offenses.

     2.     I received a Bachelor's degree in Business Administration with a major in Finance. I received extensive training in financial investigative techniques and in the law of search and seizure under the Fourth Amendment, having undergone 26 weeks of training at the Federal Law Enforcement Training Center, and at several in-service training seminars dealing with financial investigative techniques and Money Laundering and Bank Secrecy Act violations.

     3.     During the course of my employment with IRS-CI, I have conducted and assisted on several criminal investigations involving tax fraud, money laundering and the

illegal structuring of financial transactions. These investigations focused on individuals deriving income from both legal and illegal sources.

4.      This affidavit is being submitted for the purpose of establishing probable cause to believe that Michael Rech ("RECH") has committed violations of Title 18, United States Code, Section 1343 (wire fraud) and Title 18 United States Code, Sections 1956(a)(1)(B)(ii) and 1957 (money laundering) (collectively "TARGET OFFENSES").

5.      The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with and information from other law enforcement officers, and my review of documents and records related to this investigation.

6.      Because this affidavit is being submitted for the limited purpose of establishing probable cause to secure a criminal complaint, I have not included each and every detail of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause that RECH committed the TARGET OFFENSES.

## OVERVIEW OF COVID-19 PANDEMIC, CARES ACT, AND PAYCHECK PROTECTION PROGRAM

7.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed into law on March 27, 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.

8.      One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other

expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

9.     To obtain a PPP loan, a qualifying business must submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. One such certification requires that the applicant (through its authorized representative) affirm that "[t]he [PPP loan] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."   In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses and (b) number of employees.  The payroll expense figure is used to calculate the amount of money the small business is eligible to receive under the PPP.

10.    A PPP loan application is received and processed by a participating institution, then transmitted for further review to the Small Business Administration ("SBA") to assess the applicant's eligibility.  If a PPP loan application is approved, the participating financial institution funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Data from the application, including information about the applicant, the applicant's payroll expenses, and the total amount of the loan is transmitted by the lender to the SBA in the course of processing the loan.

11.    PPP loan proceeds must be used by the business on certain permissible expenses to include payroll costs, interest on mortgages, rent, and utilities. The PPP allows

3

the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and uses a certain amount of the PPP loan proceeds, at least 75%, on payroll expenses.

## DEFENDANT AND RELEVANT PARTIES

### MICHAEL RECH

12.     RECH is a resident of North Chili, New York.  Financial records; Internet Service Provider ("ISP") records; New York State Department of Labor ("NYS DOL") records; Internal Revenue Service ("IRS") tax records, refuse collected, and surveillance conducted all place RECH at 5 HILLTOP in North Chili.

### GUARDIAN OF HUMANITY, INC.

13.     Guardian of Humanity, Inc. ("GUARDIAN") is a nonprofit corporation that was incorporated in Arizona on or about November 16, 2017.  As detailed in this affidavit, RECH is the Director, President, and CEO of GUARDIAN and controls the finances of GUARDIAN.

### ECLIPSE ADVISORS, LLC

14.     Eclipse Advisors, LLC ("ECLIPSE") is a limited liability company that was organized in Arizona on or about August 8, 2013.  As detailed in this affidavit, RECH is the sole member of ECLIPSE and controls the finances of ECLIPSE.

4

**OTHER PARTIES**

15.     WebBank is a federally insured financial institution with headquarters in Utah. WebBank is an approved SBA lender and funded one PPP loan to GUARDIAN.

16.     PayPal, Inc. ("PayPal") participates in the PPP as an entity that originates PPP loans.   Small businesses seeking PPP loans can apply through PayPal using an online platform.   PayPal originates the PPP loans and partners with various banks, including WebBank, to fund and disburse the PPP loans.  PayPal received one PPP loan application on behalf of GUARDIAN that was ultimately funded by WebBank.

17.     ReadyCap Lending, LLC ("ReadyCap") is an approved non-bank SBA lender and received one PPP loan application on behalf of GUARDIAN.  ReadyCap funded one PPP loan to GUARDIAN.

18.     Citizens Bank, N.A. ("Citizens Bank") is a federally insured financial institution with headquarters in Rhode Island.  Citizens Bank is an approved SBA lender. Citizens Bank received one PPP loan application on behalf of ECLIPSE.  Citizens Bank funded one PPP loan to ECLIPSE.

19.     Canandaigua National Bank & Trust ("Canandaigua National Bank") is a federally insured financial institution with headquarters in New York.

**OVERVIEW OF THE PPP SCHEME**

20.     The government is investigating wire fraud and money laundering violations committed by RECH.  There is probable cause to believe that beginning in or about April 2020, to in or about February 2021, RECH fraudulently obtained three PPP loans.

Specifically, RECH submitted three false and misleading PPP loan applications and supporting documentation to SBA approved lenders.

21.      The first PPP loan was in the name of ECLIPSE and the second PPP loan was in the name of GUARDIAN.  RECH misrepresented the number of employees, amount of payroll, and ownership and/or management on the applications.  The loan applications were submitted via the internet using wire communications.  Reliance on the false and misleading information caused the PPP loan proceeds to be disbursed by the lenders to GUARDIAN and ECLIPSE.  RECH successfully obtained the proceeds from the two PPP loans totaling $127,500 in April of 2020.  The PPP loan proceeds disbursed to GUARDIAN were sent via interstate wire.  RECH subsequently withdrew the proceeds of both PPP loans in currency in structured transactions below $10,000 in order to avoid federal reporting requirements[1].

22.      A third PPP loan in the name of GUARDIAN was recently applied for and funded by an SBA approved lender.  The PPP loan proceeds in the amount of $150,000 were disbursed on or about February 18, 2021.  The proceeds of this PPP loan were deposited to a bank account in the name of GUARDIAN.  The entirety of those funds was promptly transferred to an account in the name of ECLIPSE at a different financial institution.  A portion of the PPP loan proceeds was subsequently withdrawn from the ECLIPSE bank account in currency in structured transactions below $10,000 in order to avoid federal reporting requirements.

---

[1] Pursuant to Title 31, United States Code, Section 5313(a), and regulations there under, including 31 C.F.R. Sections 103.22, 103.27 and 103.28, domestic financial institutions (including but not limited to banks, Money Service Businesses (MSB), and issuers, sellers or redeemers of money orders) are generally required to prepare and submit a report, known as a Currency Transaction Report (CTR), for each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000 with the Internal Revenue Service within fifteen days following the date of the transaction.

## FIRST TWO SBA PPP LOANS

23.     In April 2020, RECH applied for two fraudulent PPP loans on behalf of the

two entities he controls.  RECH successfully obtained PPP loan proceeds based on fraudulent

information as follows:

| Business Name | Lending Institution | Loan Amount | Amount Disbursed | Approximate Date of Loan Application |
|---------------|---------------------|-------------|------------------|--------------------------------------|
| GUARDIAN | WebBank / PayPal | $37,500 | $37,500 | April 27, 2020 |
| ECLIPSE | Citizens Bank | $90,000 | $90,000 | April 26, 2020 |

24.     Records were obtained from WebBank, PayPal, and Citizens Bank.  The

records show that both PPP loan applications were submitted via the internet using interstate

wire communications.  The internet submissions originated in New York and were received

and/or processed by the lender's computer servers located outside of New York.

25.     Both PPP loan applications were submitted to the lenders from Internet

Protocol ("IP") address 172.101.154.241.  Charter Communications, Inc. is an internet,

telephone, and cable service provider.  Records from Charter Communications, Inc. report

that IP address 172.101.154.241 was assigned to an account in the name of RECH with

service at the 5 HILLTOP.  The PPP loan application for GUARDIAN submitted to PayPal

would have been processed by computer servers located in Arizona, Nevada, or Utah.  PayPal

does not use computer servers located in New York.  The PPP loan application for ECLIPSE

submitted to Citizens Bank was received by computer servers located in Rhode Island.

26.     The PPP applications both report that ECLIPSE and GUARDIAN have an

address of 5 HILLTOP.  The applications made the following false representations:

| Business | Primary Contact | Average Monthly Payroll | Number of Employees |
|---|---|---|---|
| GUARDIAN | RECH | $15,000 | 4 |
| ECLIPSE | RECH | $36,000 [2] | 10-50 |

27.     PayPal and Citizens Bank received multiple fraudulent IRS Forms 941, Employer's Quarterly Federal Tax Returns, to support the payroll expenses reported on the PPP loan applications.  The Forms 941 made the following false representations:

| Business | Time period | Number of employees who received wages... | Wages, tips, and other compensation ... | Federal income tax withheld... |
|---|---|---|---|---|
| ECLIPSE | April, May, June 2019 | 3 | $75,000 | $7,500 |
| GUARDIAN | April, May, June 2019 | 3 | $75,000 | $7,500 |
| | | | | |
| ECLIPSE | July, August, September 2019 | 3 | $75,000 | $7,500 |
| GUARDIAN | July, August, September 2019 | 3 | $75,000 | $7,500 |
| | | | | |
| ECLIPSE | October, November, December 2019 | 4 | $95,000 | $9,500 |
| GUARDIAN | October, November, December 2019 | 4 | $95,000 | $9,500 |
| | | | | |
| ECLIPSE | January, February, March 2020 | 4 | $95,000 | $9,500 |
| GUARDIAN | January, February, March 2020 | 4 | $95,000 | $      0 |

---

[2] The application breaks the figure into "Average monthly salaries, wages, commissions to employees" of $30,000; "Average monthly payments for vacation, parental, family, medical, or sick leave" of $3,000; and "Average monthly allowance for dismissal or separation" of $3,000.

8

28.     With the exception of January, February, March 2020, the Forms 941 for GUARDIAN and ECLIPSE for each respective time period report identical figures for the number of employees; wages, tips and other compensation; and federal income tax withheld. All the Forms 941 report 5 HILLTOP as the business' address and are signed by RECH with the title of "manager."  As set forth below, records from IRS and NYS DOL establish that the statements regarding payroll expenses and number of employees made on the PPP applications and the Forms 941 are false.

29.     Both PPP loan applications state either "no" or "false" to the following question:  "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?"  These responses on the PPP loan applications are false since RECH is the owner and/or manages both GUARDIAN and ECLIPSE.  The PPP loan application for GUARDIAN reports that RECH is "Director" and 100% owner of GUARDIAN.  The PPP loan application for ECLIPSE reports that RECH is the manager of ECLIPSE.  As discussed later in this affidavit, records from Arizona Corporation Commission, Internal Revenue Service, and financial institutions report that RECH has ownership and/or manages GUARDIAN and ECLIPSE.

**THIRD SBA PPP LOAN**

30.     Records were obtained from SBA regarding a third PPP loan.  The records show that a PPP loan in the name of GUARDIAN was applied for through ReadyCap.  The records further show that GUARDIAN falsely reported on the PPP loan application that it has average monthly payroll expenses of $60,000.  As set forth below, records from IRS and NYS DOL establish that the statement regarding payroll expenses is false.

9

31.     On March 3, 2021, your Affiant spoke with a representative of ReadyCap.  The representative stated that GUARDIAN applied for a PPP loan and loan proceeds of $150,000 were disbursed to GUARDIAN on or about February 18, 2021 based on the false loan application.

32.     On March 3, 2021, your Affiant spoke with a representative of Canandaigua National Bank.  The representative stated that Canandaigua National Bank account x2739 in the name of GUARDIAN received a $150,000 deposit from ReadyCap on or about February 19, 2021.  As detailed later in this affidavit, RECH is the sole signer on account x2739.  The representative further stated that two checks were subsequently drawn on account x2739.  The first check in the amount of $50,000 payable to ECLIPSE cleared on or about February 21, 2021.  The second check in the amount of $100,000 payable to ECLIPSE cleared on or about February 26, 2021.  The representative stated that both checks were negotiated at Citizens Bank.  The representative further stated that ReadyCap tried to reverse the $150,000 deposit but was unsuccessful since the funds had already been removed from account x2739.

33.     On March 3, 2021, your Affiant spoke with a representative of Citizens Bank. The representative stated that two checks were recently deposited in Citizens Bank account x8144 in the name of ECLIPSE.  As detailed later in this affidavit, RECH is the sole signer on account x8144.  A $50,000 check from Canandaigua National Bank account x2739 was deposited on or about February 22, 2021.  A $100,000 check from Canandaigua National Bank account x2739 was deposited on or about February 25, 2021.  As detailed later in this affidavit, $57,000 was subsequently withdrawn from Citizens Bank account x8144 in currency in transactions less than $10,000 in order to avoid federal reporting requirements.

10

## OTHER RECORDS

## ARIZONA CORPORATION COMMISSION

34.     Records from Arizona Corporation Commission report that RECH and C.F. are the Directors of GUARDIAN.   RECH signed the Articles of Incorporation as the Incorporator.   Annual Reports for GUARDIAN were filed with Arizona Corporation Commission for 2018 (filed on or about October 15, 2018), 2019 (filed on or about October 2, 2019), and 2020 (filed on or about October 2, 2020).  The Annual Reports report that RECH is "President/CEO" of GUARDIAN and bear the electronic signature of RECH.   5 HILLTOP is listed as the address for RECH and C.F.

35.     Records from Arizona Corporation Commission report that RECH is the sole member of ECLIPSE.  The Articles of Organization state that the member(s) will manage ECLIPSE and is signed by RECH.

## INTERNAL REVENUE SERVICE

36.     As previously detailed, IRS Forms 941, Employer's Quarterly Federal Tax Returns, were submitted to the PayPal and Citizens Bank to support the payroll expenses reported on the PPP loan applications.   Records for ECLIPSE and GUARDIAN were requested from IRS the years 2019 and 2020.  IRS has no record of ECLIPSE or GUARDIAN filing any tax returns, including Forms 941, for 2019 or 2020.

37.     Records obtained from IRS report that GUARDIAN was granted tax exempt status under Internal Revenue Code Section 501(c)(3) on or about June 26, 2018.  The IRS determination letter was sent to "GUARDIAN OF HUMANITY, INC. C/O MICHAEL RECH" at 5 HILLTOP.  An IRS Form 990, Return of Organization Exempt from Income

11

Tax, for GUARDIAN was filed for 2018 with the IRS on or about March 6, 2019.  The Form 990 reports GUARDIAN's address as 5 HILLTOP and is signed by RECH with the title of "officer."

38.     Records obtained from IRS report that RECH filed a federal income tax return for the year 2019.  The tax return reports wage, salary, tips, etc. income of $0.

## NEW YORK DEPARTMENT OF LABOR

39.     New York requires employers to report their payroll and pay unemployment insurance contributions.  Employers report this on New York Form NYS-45, Quarterly Combined Withholding, Wages Reporting and Unemployment Insurance Return.  General business employers are required to begin reporting payroll and pay unemployment insurance contributions when remuneration exceeds $299.  Non-profit employers are required to begin reporting payroll and pay unemployment insurance contributions when remuneration exceeds $999.  Records for ECLIPSE and GUARDIAN were requested from NYS DOL. NYS DOL has no records for or returns filed for ECLIPSE or GUARDIAN.  As previously detailed, IRS Forms 941, Employer's Quarterly Federal Tax Returns, were submitted to the lenders to support the payroll expenses reported on the PPP loan applications.  The payroll reported on the PPP loan applications and the Forms 941 far exceed the thresholds requiring the filing of Forms NYS-45 with NYS DOL.

## RECIEPT AND DISPOSITION OF PPP LOAN PROCEEDS

40.     As set forth below, the proceeds of the two initial PPP loans were deposited to accounts in the name of ECLIPSE at Citizens Bank and GUARDIAN at Canandaigua National Bank.  A review of the records from Citizens Bank and Canandaigua National Bank

reveal that ECLIPSE and GUARDIAN did not have transactions consistent with the business enterprises claimed in the PPP loan applications. The records do not show any payments consistent with payroll being made from the accounts. Prior to receiving the proceeds of the PPP loans, the accounts engaged in minimal transactions. Once the proceeds of the PPP loans were deposited to the accounts, almost all of the funds were promptly withdrawn in currency in a series of transactions below $10,000. A review of a personal bank account in RECH's name at Citizens Bank shows subsequent deposits of cash to fund payments to credit cards and utility companies.

### CANANDAIGUA NATIONAL BANK – ACCOUNT x2739 – GUARDIAN

41.    Records obtained from Canandaigua National Bank report that account number x2739 was opened in the name of GUARDIAN on or about July 5, 2019. RECH is the sole signer on account x2739, and the records report RECH's title as "Director." The signature card and statements report GUARDIAN's address is 5 HILLTOP.

42.    Records for account x2739 show that from the account opening on or about July 5, 2019 through April 28, 2020, the only transactions were a $100 currency deposit and three (3) electronic transactions with the description "PAYPAL VERIFYBANK…" totaling $0.38. The balance of account x2739 on April 28, 2020 was $100. The $37,500 PPP loan proceeds funded by WebBank was deposited to account x2739 on April 29, 2020. The deposit was in the form of an interstate wire transfer originating from WebBank's account at Zions Bankcorporation, N.A. Zions Bankcorporation, N.A. is headquartered in Utah. Based on my training and experience along with my review of the bank records for GUARDIAN that show little to no financial transactions prior to the deposit of the PPP loan proceeds, it is your affiant's belief that

GUARDIAN is a non-operational company as it does not appear to generate any sources of income or business expenses. Additionally, the PPP loan proceeds were obtained under false pretenses as outlined above and are proceeds of a specified unlawful activity ("SUA"), namely wire fraud in violation of Title 18, United States Code, Section 1343.

43.     Records for account x2739 further show that $37,300 in fraudulently obtained PPP loan proceeds, which are proceeds of a SUA, namely wire fraud, were subsequently withdrawn in currency by RECH in a series of transactions in amounts below $10,000 in an attempt to avoid the CTR reporting requirements, which is all in violation of Title 1956(a)(1)(B)(ii). The table below summarizes the currency withdrawals:

| Date | Amount |
|------|--------|
| 05/01/2020 – Friday | $ 9,000 |
| 05/05/2020 – Tuesday | $ 9,000 |
| 05/07/2020 – Thursday | $ 9,000 |
| 05/12/2020 – Tuesday | $ 9,000 |
| 05/20/2020 – Wednesday | $ 1,300 |
| TOTAL | $37,300 |

As previously stated, RECH has sole signatory authority for account x2739. Records from Canandaigua National Bank confirm that RECH conducted the currency withdrawals on May 1, 2020; May 5, 2020; May 7, 2020; and May 12, 2020.

44.     The aforementioned transactions and a $15 fee were the only transactions for account x2739 from the account opening on or about July 5, 2019 through July 22, 2020. The balance of account x2739 as of July 22, 2020 was $285. The fact that RECH immediately withdrew the entire amount of the PPP loan proceeds in cash further supports your affiant's belief that GUARDIAN is a non-operational company and RECH obtained the PPP loan proceeds under false pretenses.

45.     As previously discussed, your Affiant spoke with a representative of Canandaigua National Bank on March 3, 2021.  The representative stated that account x2739 received a $150,000 deposit from ReadyCap on or about February 19, 2021.  The deposit is in the form of an Automated Clearing House ("ACH") deposit.  The PPP loan proceeds deposited from ReadyCap were obtained under false pretenses as outlined above and are proceeds of a SUA, namely wire fraud, in violation of Title 18, United States Code, Section 1343.

46.     RECH subsequently utilized the fraudulently obtained PPP funds, which represent proceeds of a SUA, namely wire fraud, deposited to the bank account of GUARDIAN, to conduct two monetary transactions in excess of $10,000 in violation of Title 18 U.S.C § 1957.  Specifically, two checks were subsequently drawn on account x2739 and negotiated at Citizens Bank.  The first check in the amount of $50,000 payable to ECLIPSE cleared on or about February 21, 2021.  The second check in the amount of $100,000 payable to ECLIPSE cleared on or about February 26, 2021.

## CITIZENS BANK – ACCOUNT x8144 – ECLIPSE

Records obtained from Citizens Bank report that account number x8144 was opened in the name of ECLIPSE on or about September 9, 2013.  RECH is the sole signer on account x8144.  Statements from February 1, 2016 to August 31, 2020 report ECLIPSE's address is 5 HILLTOP.

47.     Records for account x8144 reflect minimal transactions from January 2019 through May 3, 2020.  The activity consists of fee rebates and currency deposits totaling $30. The balance of account x8144 on May 3, 2020 was $45.  The $90,000 PPP loan proceeds funded by Citizens Bank was deposited to account x8144 on May 4, 2020.  The deposit is in the form of an Automated Clearing House ("ACH") deposit.

48.     Based on my training and experience along with my review of the bank records for ECLIPSE that show little to no financial transactions prior to the deposit of the PPP loan proceeds, it is your affiant's belief that ECLIPSE is a non-operational company as it does not appear to generate any sources of income or business expenses.  Additionally, the PPP loan proceeds deposited to Citizens Bank in April of 2020 were obtained under false pretenses as outlined above and are proceeds of a SUA, namely wire fraud, in violation of Title 18, United States Code, Section 1343.

49.     Records for account x8144 further show that $90,000 in fraudulently obtained PPP loan proceeds, which are proceeds of a SUA, namely wire fraud, were subsequently withdrawn in currency by RECH in a series of transactions in amounts below $10,000 in an attempt to avoid the CTR reporting requirements, which is all in violation of Title 1956(a)(1)(B)(ii).  The table below summarizes the currency withdrawals:

| Date | Amount |
|---|---|
| 05/05/2020 – Tuesday | $ 9,000 |
| 05/06/2020 – Wednesday | $ 9,000 |
| 05/07/2020 – Thursday | $ 9,000 |
| 05/08/2020 – Friday | $ 9,000 |
| 05/09/2020 – Saturday | $ 4,000 |
| 05/12/2020 – Tuesday | $ 9,000 |
| 05/13/2020 – Wednesday | $ 4,500 |
| 05/13/2020 – Wednesday | $ 4,500 |
| 05/14/2020 – Thursday | $ 9,000 |
| 05/15/2020 – Friday | $ 9,000 |
| 05/19/2020 – Tuesday | $ 4,500 |
| 05/20/2020 – Wednesday | $ 9,500 |
| TOTAL | $90,000 |

RECH conducted the aforementioned withdrawals.  RECH has sole signatory authority for account x8144.  New York State Department of Motor Vehicles issued RECH a Client

Identification Number 265961626.  This is the same identification number listed in the Citizens Bank records for the individual that conducted the withdrawals.  The fact that RECH immediately withdrew the entire amount of the PPP loan proceeds in cash further supports your affiant's belief that ECLISPE is a non-operational company.

50.     As previously discussed, your Affiant spoke with a representative of Citizens Bank.  The representative stated that two checks were recently deposited in Citizens Bank account x8144 in the name of ECLIPSE.  A $50,000 check from Canandaigua National Bank account x2739 was deposited on or about February 22, 2021.  A $100,000 check from Canandaigua National Bank account x2739 was deposited on or about February 25, 2021.  As detailed above the two checks totaling $150,000 from Canandaigua National Bank Account x2739 originated from the fraudulently obtained PPP loan RECH obtained through ReadyCap, which represent proceeds of a SUA, namely wire fraud.

51.     Records for account x8144 further show that $57,000 of the $150,000 in fraudulently obtained PPP loan proceeds, which are proceeds of a SUA, namely wire fraud, were subsequently withdrawn in currency by RECH in a series of transactions in amounts below $10,000 in an attempt to avoid the CTR reporting requirements, which is all in violation of Title 1956(a)(1)(B)(ii).  The table below summarizes the currency withdrawals:

| Date | Amount |
|---|---|
| 02/25/2021 – Thursday | $ 9,500 |
| 02/26/2021 – Friday | $ 9,500 |
| 02/27/2021 – Saturday | $ 9,500 |
| 03/01/2021 – Monday | $ 9,500 |
| 03/02/2021 – Tuesday | $ 9,500 |
| 03/03/2021 – Wednesday | $ 6,000 |
| 03/03/2021 – Wednesday | $ 3,500 |
| TOTAL | $57,000 |

17

As previously discussed, your Affiant spoke with a representative of Citizens Bank.   The representative stated that Citizens Bank would be freezing the $93,306.34 balance of account x8144.

52.   As previously outlined, the PPP loan proceeds, which are proceeds of a SUA, namely wire fraud, were deposited to Canandaigua National Bank account x2739 in the name of GUARDIAN and Citizens Bank account x8144 in the name of ECLIPSE.  The chart below summarizes the PPP loan proceeds that were deposited, subsequently withdrawn in currency by RECH in a series of transactions in amounts below $10,000 in an attempt to avoid the CTR reporting requirements, which is in violation of Title 1956(a)(1)(B)(ii), and monetary transactions conducted by RECH in excess of $10,000, which is in violation of Title 18 U.S.C § 1957.

| Date | Account(s) | Amount | Description |
|---|---|---|---|
| 04/29/2020 - Wednesday | Canandaigua National Bank x2739 | $37,500 | PPP loan proceeds deposited from WebBank |
| 05/01/2020 – Friday | Canandaigua National Bank x2739 | $9,000 | Cash withdrawal |
| 05/04/2020 – Monday | Citizens Bank x8144 | $90,000 | PPP loan proceeds deposited from Citizens Bank |
| 05/05/2020 – Tuesday | Canandaigua National Bank x2739 | $9,000 | Cash withdrawal |
| 05/05/2020 – Tuesday | Citizens Bank x8144 | $9,000 | Cash withdrawal |
| 05/06/2020 - Wednesday | Citizens Bank x8144 | $9,000 | Cash withdrawal |
| 05/07/2020 - Thursday | Canandaigua National Bank x2739 | $9,000 | Cash withdrawal |
| 05/07/2020 - Thursday | Citizens Bank x8144 | $9,000 | Cash withdrawal |

| 05/08/2020 – Friday | Citizens Bank x8144 | $9,000 | Cash withdrawal |
|---|---|---|---|
| 05/09/2020 – Saturday | Citizens Bank x8144 | $4,000 | Cash withdrawal |
| 05/12/2020 - Tuesday | Canandaigua National Bank x2739 | $9,000 | Cash withdrawal |
| 05/12/2020 - Tuesday | Citizens Bank x8144 | $9,000 | Cash withdrawal |
| 05/13/2020 – Wednesday | Citizens Bank x8144 | $4,500 | Cash withdrawal |
| 05/13/2020 – Wednesday | Citizens Bank x8144 | $4,500 | Cash withdrawal |
| 05/14/2020 – Thursday | Citizens Bank x8144 | $9,000 | Cash withdrawal |
| 05/15/2020 – Friday | Citizens Bank x8144 | $9,000 | Cash withdrawal |
| 05/19/2020 – Tuesday | Citizens Bank x8144 | $4,500 | Cash withdrawal |
| 05/20/2020 - Wednesday | Canandaigua National Bank x2739 | $1,300 | Cash withdrawal |
| 05/20/2020 – Wednesday | Citizens Bank x8144 | $9,500 | Cash withdrawal |
| 02/19/2021 – Friday | Canandaigua National Bank x2739 | $150,000 | PPP loan proceeds deposited from ReadyCap |
| On or about 02/22/2021 - Monday | Canandaigua National Bank x2739 / Citizens Bank x8144 | $50,000 | Check transfer of PPP loan proceeds from x2739 to x8144 |
| On or about 02/25/2021 - Thursday | Canandaigua National Bank x2739 / Citizens Bank x8144 | $100,000 | Check transfer of PPP loan proceeds from x2739 to x8144 |
| 02/25/2021 – Thursday | Citizens Bank x8144 | $9,500 | Cash withdrawal |
| 02/26/2021 – Friday | Citizens Bank x8144 | $9,500 | Cash withdrawal |
| 02/27/2021 - Saturday | Citizens Bank x8144 | $9,500 | Cash withdrawal |

| 03/01/2021 – Monday | Citizens Bank x8144 | $9,500 | Cash withdrawal |
| 03/02/2021 – Tuesday | Citizens Bank x8144 | $9,500 | Cash withdrawal |
| 03/03/2021 – Wednesday | Citizens Bank x8144 | $6,000 | Cash withdrawal |
| 03/03/2021 – Wednesday | Citizens Bank x8144 | $3,500 | Cash withdrawal |

## CONCLUSION

53. Based on the forgoing, the undersigned respectfully submits that there is probable cause to believe that RECH committed the TARGET OFFENSES.

ALAN ROTH
Special Agent
Internal Revenue Service

Affidavit submitted electronically by email in
.pdf format. Oath administered, and contents
and signature, attested to me as true and accurate
telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d)
on this 19 day of March, 2021.

MARIAN W. PAYSON
United States Magistrate Judge

20