UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                  Plaintiff,

            v.

MICHAEL RECH,

                                 Defendant.

_____

**REPORT & RECOMMENDATION**

21-CR-6080CJS

## **PRELIMINARY STATEMENT**

By Order of Hon. Charles J. Siragusa, United States District Judge, dated May 13,

2021, all pretrial matters in the above-captioned case have been referred to this Court pursuant to

28 U.S.C. §§ 636(b)(1)(A)-(B).  (Docket # 13).

On May 13, 2021, the grand jury returned a thirty-six-count indictment charging

Michael Rech ("Rech") with bank fraud, wire fraud, and money laundering, in violation of 18

U.S.C. §§ 1344(2), 1343, 1956(a)(1)(B)(ii), and 1957(a).  (Docket # 11).  Currently pending

before the Court are Rech's motions to suppress tangible evidence and statements he made

during the execution of a search warrant on March 26, 2021.[1]  (Docket ## 30, 56).  He also seeks

a *Franks* hearing.  (*Id.*).  On March 1, 2022, this Court held an evidentiary hearing on Rech's

---

[1] Rech filed several motions seeking other forms of relief, including a bill of particulars, *Brady* material, discovery, rulings pursuant to Federal Rules of Evidence 404(b), 608, and 609, *Jencks* material, disclosure of grand jury minutes, preservation of rough notes, and leave to file additional motions.  (Docket # 30).  Each of the above-referenced motions was decided by the undersigned or resolved by the parties in open court on November 16, 2021.  (Docket ## 30, 39, 41).

Rech also sought suppression of evidence that he maintains was seized outside the scope of the search warrant.  (Docket # 30 at ¶ 63).  A subsequent submission filed by the government rendered this request moot, and defendant has withdrawn it.  (Docket ## 57, 60 at 1-4).

motion to suppress statements (Docket ## 58, 60). The parties declined the opportunity to file

any post-hearing submissions. (Docket # 60 at 36). For the reasons discussed below, I

recommend denial of Rech's motions for a *Franks* hearing and suppression of evidence and

statements.


## FACTUAL BACKGROUND

### I.    Testimony of Roth

This Court conducted an evidentiary hearing concerning the circumstances

surrounding statements made by Rech on March 26, 2021, at the time of his arrest and search of

his residence at 5 Hilltop Drive, North Chili, New York.[2] (Docket # 58). The government called

Internal Revenue Service Special Agent Alan Roth ("Roth"), who testified about Rech's

statements. (Docket # 60).

Roth testified that he has been employed as a Special Agent with the Criminal

Investigation Division of the Internal Revenue Services ("IRS") for approximately fourteen

years. (Tr. 5-6). On March 26, 2021, Roth participated in the execution of an arrest warrant for

Rech and a search warrant for 5 Hilltop Drive, North Chili, New York. (Tr. 9). Roth was not

involved in the initial entry into the premises; he was staged with other agents in a nearby

parking lot. (Tr. 10). Roth testified that over his team's radio he heard the Homeland Security

Investigations ("HSI") SWAT team make entry into Rech's residence. (Tr. 10). When he heard

the entry, Roth looked at his cellphone and "made a mental note" that it was 6:00 a.m. (Tr. 10).

At approximately 6:26 a.m., members of the entry team called Roth to inform him that Rech was

in custody and that the residence was secured. (Tr. 10-11). At that time, Roth and the other

---

[2] The transcript of the hearing is referred to herein as "Tr. ___," and citations thereto utilize the internal page number appearing in the transcript rather than in the docket header. (Docket # 60).

agents who were assembled in the parking lot entered their vehicles and drove to 5 Hilltop Drive. (Tr. 10-11).

Roth arrived at 5 Hilltop Drive at approximately 6:27 a.m., while it was still dark out. (Tr. 11, 26). He exited his vehicle, briefly conversed with members of the entry team, and was directed to an HSI van in which Rech was detained. (Tr. 11, 26). According to Roth, the interior of the van had benches along each side, and Rech was handcuffed and seated on one of the benches. (Tr. 11-12, 26). Roth and Special Agent Ashlaw entered the vehicle and sat on the opposite bench. (Tr. 12). Roth could not recall the distance between the floor of the van and the ground, but he was able to step into the vehicle without assistance. (Tr. 26-27). Both agents were visibly armed, although they did not draw their guns. (Tr. 12). Roth was wearing a ballistic vest identifying him as a member of the IRS. (Tr. 12).

Roth testified that he informed Rech that he and Ashlaw were IRS agents who were there to execute an arrest warrant for Rech and a search warrant for his residence. (Tr. 13, 29). Rech asked to see a copy of the arrest warrant, and Roth provided him with a copy for his review. (Tr. 13, 27-30). Approximately ten minutes after Roth entered the van, an HSI agent informed him that HSI personnel would be leaving the scene, at which point Roth and Ashlaw escorted Rech, who was still handcuffed, out of the van and to a nearby IRS vehicle. (Tr. 13-14, 27). Roth could not recall whether the agents physically assisted Rech to get out of the van. (Tr. 30, 34). Roth and Special Agent Thomas North stood with Rech beside the IRS vehicle while Ashlaw entered the residence. (Tr. 14, 31). Roth asked Rech whether he was experiencing any COVID-19-related symptoms, and Rech informed him that he did not have COVID-19 and was not experiencing any symptoms. (Tr. 15).

3

A short while later, Ashlaw exited the residence and informed Roth that a locked gun safe had been located inside the residence.  (Tr. 15).  At that point, Roth read Rech his *Miranda* rights from an IRS-issued card.  (Tr. 16, 31; Government's Exhibit ("G. Ex.") 1).[3] After reading the rights, Roth asked Rech whether he understood his rights, and Rech responded, "Yes."  (Tr. 18).  Roth informed Rech that agents had encountered multiple locked safes inside the house and that the warrant permitted the agents to open them.  (Tr. 19, 31).  He requested that Rech provide the combinations so that the safes could be opened more easily and without damage.  (Tr. 19, 31-32).  Rech asked to review a copy of the search warrant, which Roth provided, and Rech ultimately provided the agents with the combinations for the safes. (Tr. 19-20, 34-35).

A few minutes later, a computer forensics agent informed Rech that a cellular telephone had been located inside he premises and requested the passcode for the phone. (Tr. 20).  According to Roth, Rech was advised that provision of the passcode would allow for faster extraction of the phone's contents.  (Tr. 33).  Rech provided the passcode for the phone.

---

[3]  Roth testified that he customarily carried the IRS statement of rights card with him and read it verbatim to suspects in custody before interviewing them, as he did with Rech.  (Tr. 7-8, 16).  The card states:

Before we ask you any questions, it is my duty to advise you of your rights.
- You have the right to remain silent.
- Anything you say can be used against you in court, or other proceedings.
- You have the right to consult an attorney before making any statement or answering any question, and you may have an attorney present with you during questioning.
- You may have an attorney appointed by the U.S. Magistrate or the court to represent you if you cannot afford or otherwise obtain one.
- If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer.  HOWEVER . . .
- You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire.

(G. Ex. 1).

4

(Tr. 21).  Roth then asked Rech whether he would be willing to be interviewed by the agents.
(Tr. 21).  Rech declined and requested an attorney.  (Tr. 21).  Rech had not previously requested
an attorney or indicated that he did not want to speak to the agents.  (Tr. 21-22, 29).  Roth
responded that they would be leaving the residence shortly and secured Rech in the back of the
IRS vehicle.  (Tr. 21).

At approximately 7:12 a.m., Roth and Ashlaw transported Rech to the Monroe
County Sheriff's substation and placed him into a holding cell.  (Tr. 22-23).  Rech was thereafter
transported by Roth and Ashlaw to the United States Marshals Service Office in the Federal
Building.  (Tr. 23-24).  During the trip to the Federal Building, Roth advised Rech that he would
be processed and have an initial appearance.  (Tr. 25).  Rech responded that the warrants were
being executed in retaliation for ongoing civil litigation in which Rech was involved.  (Tr. 25).
Rech asked the agents for their names, indicating that he wanted the identities of the agents for
the purposes of civil litigation, and Roth provided his name to Rech.  (Tr. 25).

Roth testified that during his encounter with Rech neither he nor any other agents
drew their weapons.  (Tr. 12, 15).  According to Roth, Rech did not appear to be under the
influence of drugs or alcohol or have any visible injuries, and he appeared to understand what
was said to him.  (Tr. 17-18).  According to Roth, Rech never complained of an ankle injury and
did not appear to limp.  (Tr. 17-18).  Roth testified that he did not make any threats or promises
to Rech, and he did not hear any other officers make any threats or promises.  (Tr. 17-18).

According to Roth, if Rech had not provided the combination to unlock the safes,
agents would have contacted a locksmith to open them.  (Tr. 20-21).  Roth testified that he has
employed locksmiths to open safes in the past and that they have done so without causing
damage to the safes.  (Tr. 21, 31-32).

II.    **Rech's Affidavit**

Rech submitted an affidavit in support of his motions to suppress.  (Docket # 56 at 8-11).  Rech maintains that in the early morning of March 26, 2021, he was asleep in his home at 5 Hilltop Drive, North Chili, New York, when agents entered it to execute a search warrant.  (*Id.* at ¶¶ 2, 6).  According to Rech, this occurred "long before 6:00 a.m."  (*Id.* at ¶ 2).  Rech was awakened by the sound of one of the agents "smash[ing]" one of the home's windows.  (*Id.* at ¶ 6).  When Rech went to investigate and encountered the agents, he was directed to walk towards the agents.  (*Id.*).  Rech explained that he was barefoot, at which point one of the agents brought him a pair of shoes and placed him in handcuffs.  (*Id.* at ¶ 7).

According to Rech, officers pinned him against the railing of his porch and repeatedly asked him to disclose where the drugs were located.  (*Id.* at ¶ 8).  Rech responded that there were no drugs in the premises.  (*Id.*).  Rech was escorted to his front lawn while agents "continue[d] to cause damage to [his] home," including breaking more windows.  (*Id.*).  In response to Rech's inquiries regarding the damage, one of the agents responded that law enforcement would pay for the damage.  (*Id.*).

Rech asked to sit down, and the agents placed him in the back of an armored vehicle.  (*Id.* at ¶ 9).  After approximately thirty minutes, IRS agents entered the van and directed Rech to exit the vehicle.  (*Id.* at ¶ 10).  As the agents were removing Rech from the van, he twisted his ankle.  (*Id.*).  The IRS agents escorted Rech to their SUV, patted him down, and placed him in the back of it.  (*Id* at ¶ 10).

Approximately ten or fifteen minutes later, while it was still dark outside, the agents opened the SUV's back door and asked Rech for the combination for his gun safes.  (*Id.* at ¶ 11).  According to Rech, the agents told him that if he did not provide the combinations, they

6

would destroy the safes.  (*Id.*).  Rech maintains that the agents repeatedly asked him for the

combinations and threatened to "blow the safes open."  (*Id.*).  Rech contends that at that point he

requested to see the search warrant and to speak to an attorney.  (*Id.*).  According to Rech, the

agents responded, "This is not the movies."  (*Id.* at ¶ 13).  Rech eventually provided the

combinations to the safes in order to prevent their destruction.  (*Id.* at ¶ 12).

## REPORT & RECOMMENDATION

### I.    Suppression of Tangible Evidence

Rech seeks suppression of all tangible evidence seized from 5 Hilltop Drive

during the execution of the search warrant on March 26, 2021.  (Docket # 30 at ¶¶ 68-77; 56 at

¶ 4).  Rech maintains that suppression is warranted because the search warrant was invalid and

because it was executed before 6:00 a.m. in direct contravention of the warrant, which limited

the hours of execution to 6 a.m. through 10 p.m.[4]  ( *Id.*).  Rech demands a *Franks* hearing on the

grounds that Roth's affidavit submitted in support of the search warrant application contained

allegedly false or misleading statements.  (*Id.* at ¶¶ 70-71, 76).  Specifically, he argues that "the

allegations contained within the search warrant application are [de]void of any factual reference

to [Rech] or his alleged involvement in any criminal activity."  (*Id.* at ¶ 72).

I turn first to Rech's request for a *Franks* hearing.  Under *Franks v. Delaware*,

438 U.S. 154 (1978), "a district court may not admit evidence seized pursuant to a warrant if the

warrant was based on materially false and misleading information."  *United States v. Levasseur*,

816 F.2d 37, 43 (2d Cir. 1987) (citing *Franks v. Delaware*, 438 U.S. at 154).  To justify a *Franks*

---

[4]  As noted above, Rech's original motion papers also sought suppression of certain seized items on the grounds that the items were outside the scope of the warrant, but he has withdrawn that portion of his motion based upon the government's representation that it would not seek to introduce those items into evidence.  *See supra* at 1, n.1.

hearing, a defendant challenging an affidavit must make "a substantial preliminary showing that (1) the affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate's probable cause finding." *Id.* (citing *Franks*, 438 U.S. at 171-72) (internal quotation omitted). A hearing is required if the defendant provides the court with a sufficient basis upon which to doubt the truth of the affidavit at issue. As the Supreme Court has explained:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

*Franks*, 438 U.S. at 171.

Rech has failed to identify a single inaccuracy or omission in Roth's affidavit. In cases like this, "[u]nsupported conclusory allegations of falsehood or material omission cannot support a *Franks* challenge; to mandate a hearing, the [movant] must make specific allegations accompanied by an offer of proof." *Velardi v. Walsh,* 40 F.3d 569, 573 (2d Cir. 1994). I find that Rech has failed to make the requisite substantial preliminary showing and recommend that his request for a *Franks* hearing be denied.

The only alleged deficiency in Roth's affidavit that Rech has identified is the purported absence of "any factual reference to [Rech] or his alleged involvement in any criminal activity." (Docket # 30 at ¶ 72). Review of Roth's affidavit belies Rech's contention. Roth's eighty-five paragraph affidavit contains numerous references both to Rech and to his alleged involvement in criminal activity. (*See generally* Docket # 30-1 at 14-41). Indeed, the affidavit

itself identifies Rech by name over fifty times throughout the allegations describing the alleged criminal conduct. (*Id.* at ¶¶ 20-57). This confounding argument neither entitles Rech to a *Franks* hearing nor to suppression on the grounds that the search warrant was unsupported by probable cause.

Determination of Rech's challenge to the execution of the search warrant requires resolution of the conflicting versions of events offered by Roth through sworn testimony at the hearing and by Rech through a sworn affidavit included in his motion papers. Roth testified that he overheard the entry team begin to execute the warrant at 6:00 a.m. (Tr. 10), while Rech stated that the entry occurred "long before 6:00 a.m." (Docket # 56 at 8, ¶ 2). "Although[] the [c]ourt may consider [a] defendant's affidavit, it is a poor substitute for live testimony, which is the subject of cross-examination." *United States v. Nicholson*, 2016 WL 3970927, *3 (W.D.N.Y. 2016); *United States v. Riedman*, 2014 WL 713552, *16 (W.D.N.Y. 2014) (according defendant's affidavit consideration but less weight than conflicting testimony of government witnesses who were subject to cross-examination) (collecting cases). Having carefully evaluated Roth's testimony and demeanor as a witness, I find credible his testimony concerning the timing of the execution of the search warrant.[5] Accordingly, I determine that the search warrant was executed within the period authorized by the warrant and recommend that suppression on this grounds be denied.

For all of the reasons explained above, it is my recommendation that Rech's motion to suppress evidence seized from 5 Hilltop Drive be denied.

_____

[5] In reaching this conclusion, the Court draws no adverse inference against Rech based upon his decision not to testify. *United States v. Hill*, 2009 WL 922475, *4 (W.D.N.Y.), *report and recommendation adopted by*, 2009 WL 928322 (W.D.N.Y. 2009).

## II.     <u>Suppression of Statements</u>

Rech seeks to suppress his statements during the execution of the search warrant on the grounds that they were the result of custodial interrogation that occurred after he requested an attorney and without the benefit of *Miranda* warnings.  (Docket # 56 at 3-5, ¶¶ 5-12, 15).  He also maintains that the circumstances of his interrogation rendered his statements involuntary.  (*Id.* at 4-5, ¶¶ 13-14).  The government counters that Rech was provided *Miranda* warnings before being asked questions, he did not request an attorney until after the statements were made, and his statements were otherwise voluntary.

Roth's testimony concerning his interaction with Rech differs significantly from the version offered by Rech in his affidavit.  Based upon my evaluation of Roth's demeanor and his testimony, I credit Roth's testimony and conclude that Rech was provided *Miranda* warnings before being asked to provide the combinations for the safes and the passcode for the cellular telephone.  I also find that Rech did not request an attorney or indicate an unwillingness to speak with law enforcement until after he had provided the combinations and passcode.

On the record before me, I find that Rech was properly advised of his *Miranda* rights and voluntarily waived them before speaking to the agents.  Specifically, Roth testified that before asking Rech any questions (other than COVID-related questions) he recited verbatim each of the *Miranda* rights contained on the statements card.  Roth then asked Rech whether he understood his rights, and Rech responded affirmatively.  Rech was not interrogated in violation of his Fifth Amendment rights, and suppression of his statements is not warranted on this basis.[6]

---

[6]  In his moving papers, Rech also invoked the Sixth Amendment right to counsel as a legal basis to warrant suppression of his statements. (Docket # 56 at 3, ¶ 7). At the time of the challenged statements, Rech's Sixth Amendment right to counsel had not attached. *See United States v. Chen*, 433 F. App'x 14, 15 (2d Cir. 2011) (summary order) ("[t]he Sixth Amendment right to counsel attaches upon indictment; it 'does not arise at the time of arrest upon a warrant following the filing of a complaint.'") (quoting *United States v. Smith*, 778 F.2d 925, 932 (2d Cir. 1985)). In any event, "[i]t is settled law . . . that the attachment of the Sixth Amendment right to counsel, by itself, does not preclude a defendant from validly waiving his right to counsel." *United States v. Yousef*, 327 F.3d

In addition to establishing a valid waiver, the government must also establish that the defendant's statements were made voluntarily within the meaning of the Due Process Clause. *See Dickerson v. United States*, 530 U.S. 428, 433 (2000) (recognizing "two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment"). In examining whether a statement was made voluntarily, a court must consider the totality of the circumstances in which it was given "to determine whether the government agents' conduct 'was such as to overbear [a defendant's] will to resist and bring about [statements] not freely self-determined.'" *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir.) (quoting *United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987) (citations omitted)), *cert. denied*, 510 U.S. 1003 (1993). In evaluating the totality of the circumstances, the court must assess: "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials." *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010) (quoting *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir.), *cert. denied*, 488 U.S. 945 (1988)), *cert. denied*, 131 S. Ct. 969 (2011). Where circumstances suggest evidence of "brutality, [p]sychological duress, threats, [or] unduly prolonged interrogation," statements will be deemed involuntary. *United States v. Moore*, 670 F.3d 222, 233 (2d Cir.) (alteration in original) (quoting *United States v. Verdugo*, 617 F.3d 565, 575 (1st Cir. 2010), *cert. denied*, 131 S. Ct. 954 (2011)), *cert. denied*, 133 S. Ct. 48 (2012).

The credible testimony establishes that Rech's statements were voluntarily made. Roth testified that prior to asking Rech for the safe combinations and phone passcode, he identified himself, explained the reason law enforcement agents were present, permitted Rech to

---

56, 140-41 (2d Cir.), *cert. denied*, 540 U.S. 933 (2003). Even if Rech's Sixth Amendment right had attached at the time the agents asked for the combinations and passcode, Rech knowingly and voluntarily waived that right.

review the arrest warrant, and advised Rech of his rights.  The agents did not make any threats or promises or use any physical force to induce Rech to talk, and Rech appeared to understand what was said to him and did not appear to be injured.  Even if Rech had twisted his ankle getting out of the van, he did not complain to Roth of any injury and showed no visible signs of injury.  *See United States v. Guzman*, 2021 WL 4787199, *6 (W.D. Mo.) ("courts . . . have upheld the validity of *Miranda* waivers and the voluntariness of statements even in circumstances where a defendant sustained an injury during an arrest"[;] . . . "[d]efendant was able to walk into the interview room without assistance, did not appear to be limping or injured to any degree, and did not seem to be suffering from any pain or distress") (collecting cases), *report and recommendation adopted by*, 2021 WL 4787275 (W.D. Mo. 2021).  According to Roth, prior to responding to the agents' requests for the passcodes, Rech never asked for the questioning to cease or for an attorney.  When he did request an attorney and decline to be interviewed, Roth asked him no additional questions.[7]  Considering the totality of the circumstances, I find that Rech's statements were voluntary and recommend that the district court deny his motion to suppress on this basis.[8]

---

[7]  Even if Rech's motion could be read to challenge the admissibility of the statement he later made on the way to the Federal Building that he believed the warrants had been obtained or executed in retaliation for his civil lawsuit that was pending before the undersigned (which is unclear from my review of the submission), such statement was not made in response to interrogation and need not be suppressed.  *See United States v. Moody*, 2021 WL 202698, *12 (W.D.N.Y.) ("not every statement made to a police officer by an individual who is in custody is necessarily the product of interrogation[;] . . . statements made spontaneously by a defendant are generally exempted from the *Miranda* requirements because they are not the result of deliberate elicitation by the officers"), *report and recommendation adopted by*, 2021 WL 1054372 (W.D.N.Y. 2021); *United States v. Juan*, 2019 WL 5077698, *7 (N.D. Iowa) ("during the transport to his initial appearance, [the agent] spoke first, but it amounted to 'polite conversation' . . . [including] a statement informing [defendant] about where [the agent] was taking him; it did not constitute an interrogation"), *report and recommendation adopted by*, 2019 WL 5073190 (N.D. Iowa 2019).

[8]  My conclusion that Rech's statements were lawfully obtained and voluntarily made resolves any contention, to the extent one is made (Docket # 56 at 3, ¶ 9), that evidence obtained as a result of Rech's statements should be suppressed as fruit of the poisonous tree.  Likewise, because I have found that the search warrant for 5 Hilltop Drive was valid and lawfully executed, suppression of Rech's subsequent statements is also not warranted under that doctrine.

12

## **CONCLUSION**

For the reasons stated above, I recommend that the district court deny Rech's

motions for a *Franks* hearing and an order suppressing tangible evidence and statements.

(Docket ## 30, 56).


                                                    _s/Marian W. Payson_
                                                   MARIAN W. PAYSON
                                                   United States Magistrate Judge

Dated:  Rochester, New York
        March 29, 2022

13

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[9]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

                                                                    *s/Marian W. Payson*
                                                    _____
                                                            MARIAN W. PAYSON
                                                        United States Magistrate Judge

Dated: Rochester, New York
        March 29, 2022

---

[9]  Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation.  Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).